1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 08-10744

TIMOTHY KAES,
      Plaintiff

vs.

CITY OF QUINCY, and
ROBERT F. CROWLEY,
individually, and in his capacity
as the Chief of City of Quincy
Police Department,
      Defendants

          DEPOSITION OF ROBERT F. CROWLEY, a witness

called on behalf of the Plaintiff, taken pursuant to

the applicable rules and provisions of the Federal

Rules of Civil Procedure, before Carole A. McCarthy, a

Court Reporter and Notary Public in and for the

Commonwealth of Massachusetts, at the Law Office of

Richard C. Bardi, 6 Beacon Street, Boston,

Massachusetts 02108, on Tuesday, January 27, 2009,

commencing at 11:30 a.m.

_____

NEAL A. SALLOWAY-COURT REPORTERS
5 CARDIGAN ROAD
WEST PEABODY, MASSACHUSETTS 01960
(781) 581-3993 (978) 535-0313
FAX (978) 536-3142

1          not exactly sure of the dates.

2    Q    April of '04?

3    A    I'm sorry, '08.  '08.

4    Q    How was that information of assistance to you in

5         the defense of this case if you hadn't been sued

6         in this case as of April of '08?

7                 MR. HITT: Objection.

8    A    Can I have that, again, please?

9    Q    How was the information that Lieutenant Tobin

10        provided to you regarding some alleged incident on

11        Homer Road of assistance to you in defending this

12        case if you received this information from him in

13        April of '08, but had not yet been sued?

14                MR. HITT: Objection.

15   A    The incident, as I said, was common knowledge down

16        at the police station for years, prior to this

17        incident with the -- prior to the accident.  No

18        one -- and it had been brought up not just by me,

19        but by -- it had been brought up by a lot of

20        people.  People were talking about it.  No one

21        seemed to know where or when it was.  I knew about

22        it.  And the information that I had gotten was

23        that Tim Kaes broke into some Asian family's home

26

```
 1          and shit on the floor.  And that incident was

 2          covered up.

 3                    MR. BARDI: I move to strike as

 4          unresponsive.

 5    Q     My question to you is, I asked you whether  ----

 6    A     And ----

 7    Q     Do you have more to say?

 8    A     Yes.

 9    Q     Okay.  Then go ahead.

10    A     And that information, although I did not have the

11          specifics for it, led me to believe that Tim Kaes

12          had a serious problem.

13    Q     Did you finish your answer?

14    A     And with his suspension from the Water Works

15          incident and this incident here, those three

16          incidents, I believe that he had a serious problem

17          -- drinking problem and that that was something

18          that I relied on when I asked the District

19          Attorney to appeal the Court Magistrate's

20          decision.

21                    MR. BARDI: I move to strike as

22          unresponsive.

23    Q     My question to you was, if you received this
```

1           that Tim Kaes broke into a home down on C Street,

2           along that location, an Asian family, shit on the

3           floor and was naked.

4      Q    When did you first get that information?

5      A    I'm not sure of the date.

6      Q    Give me the year.

7      A    I'm not positive.

8      Q    Can you give me a time frame, within a five-year-

9           period?

10     A    Before 2004.  Probably two thousand -- probably

11          2002, 2003 or somewhere around there.  I'll give

12          you that -- I'll give you that date.

13     Q    Were you a Police Chief at the time you got that

14          information?

15     A    No.

16     Q    While you were Police Chief, when did you get

17          specific information concerning this alleged

18          incident involving Mr. Kaes at Homer Street?

19     A    After Lieutenant Tobin told me.

20     Q    And that was in April or May of '08; right?

21     A    Somewhere around there, around that time.

22     Q    All right.

23              Now, you also mentioned in words or substance

38

1      Q    Well, who have you discussed it with?

2      A    Can I have the question, again?

3             MR. BARDI: Can you read it back, please.

4             (Pending Readback)

5             (Off the Record)

6             (Back on the Record)

7             MR. HITT: Objection, again.

8      A    No.

9      Q    As you sit here today, you can't identify any

10     writings or anyone you spoke to with respect to

11     your concerns, prior to this lawsuit; is that

12     right?

13            MR. HITT: Objection.

14     A    Regarding?

15     Q    The Homer Road incident and your suspicion that

16     Mr. Kaes had a drinking problem?

17     A    No, no.  I talked to -- I know that I had

18     discussed Mr. Kaes' problems, went back as far

19     when he was disciplined for the Water Works Club

20     or the Water Club -- Water Works Club.  And he was

21     disciplined for, I believe, letting his girlfriend

22     drive his cruiser or letting a woman drive his

23     cruiser.  And I believe he was ordered for an

39

1          alcohol evaluation and took a suspension.

2     Q    You weren't involved in that investigation of that

3          matter; were you?  The Water Works?

4               MR. HITT: Objection.

5     A    I reported the incident to Chief Falco Monday

6          morning, the morning after it happened.

7     Q    Were you involved in the investigation?

8     A    No.

9     Q    Were you involved in any of the discipline that

10         was issued to any of the officers involved?

11              MR. HITT: Objection.

12    A    No.

13    Q    You testified at a arbitration proceeding in

14         connection with Timothy Kaes seeking reinstatement

15         of his job; right?

16    A    Yes.

17    Q    Would it be fair to say that at no time did you

18         raise the Homer Road incident as being one of the

19         reasons why you sought Timothy Kaes termination?

20              MR. HITT: Objection.

21    A    No.

22    Q    That's not true?

23    A    No, I didn't bring it up.

196

SIGNATURE PAGE/ERRATA SHEET

    I, ROBERT F. CROWLEY, do hereby certify that I
have read the foregoing transcript, and to the best of
my knowledge said transcription is true and accurate,
with the exception of the following desired changes
listed below:

| PAGE | LINE | CHANGE |
|------|------|--------|
| 24 | 17 | C to SEA St |
| 28 | 9 | " |
| 30 | 1 | " |
| 35 | 9 | KEEHAH TO KEATINE |
| 37 | 12 | SuIIvAH To KAES E |
| 45 | 7 | COHYNghAM |
| 48 | 2,4,18 | SiobhAH |
| 58 | 11 | DETECTIvE TO DESECT |
| 65 | 6 | O'ConnEll to O'DonnEll |
| 119 | 2, 8 | MEllo to Miller |
| 121 | 14 | KETTY to KETY |
| 130 | 17 | PhALEH to PhELAH |
| 131 | 23 | DElAHEY ? |
| 165 | 11 | BELindA to BElindA |

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY this

18 day of FEBRUARY , 20 09 .

ROBERT F. CROWLEY

176    21    AlfA to AlbAs

197

C E R T I F I C A T E


     I, CAROLE A. MCCARTHY, a Court Reporter and
Notary Public in and for the Commonwealth of
Massachusetts, do hereby certify that the foregoing
Record, Pages 1 to 195, inclusive, is a true and
accurate transcription of my System Tapes to the best
of my knowledge, skill and ability.


     IN WITNESS WHEREOF, I have hereunto set my
hand and Notarial Seal this 7th day of February, 2009.




          CAROLE A. MCCARTHY, CCR

          Notary Public



    My Commission expires April 14, 2011.