UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TIMOTHY KAES, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>ROBERT F. CROWLEY, ET AL., )<br>)<br>    Defendants. )<br>) | Civil Action No. 08-10744-RGS |

**NORFOLK DISTRICT ATTORNEY KEATINGS' MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO QUASH OR MODIFY TRIAL SUBPOENA**

Norfolk District Attorney William R. Keating (the "District Attorney") hereby files this memorandum of law in support of his motion to quash the trial subpoena served upon him (the "Subpoena") on behalf of the defense in the above-captioned case, or alternatively, to modify its scope. Relief is warranted here in order to prevent violations of privileges that are designed to protect attorney work product, the deliberative processes of government officials, law enforcement investigative information, and communications made to prosecutors for law enforcement purposes.

**I.      RELEVANT BACKGROUND**

On May 2, 2008, Plaintiff Timothy Kaes (the "Plaintiff") commenced this action by filing a complaint (the "Complaint") against the City of Quincy and its police chief during relevant times, Robert F. Crowley (the "Defendants"). (Docket Item No. 1.) The Plaintiff asserted claims under 42 U.S.C. § 1983 and for malicious prosecution and infliction of emotional distress. (Id.) His claims were based on allegations concerning his arrest and prosecution in state court, and certain actions relative to his employment. (Id.) The District Attorney's Office was given only

limited mention.  (Id.)  On or about May 12, 2010, counsel for the Defendants served upon the District Attorney the Subpoena, which commands the recipient's testimony at trial on June 1, 2010.

## II.   ARGUMENT

The Subpoena served upon the District Attorney should be quashed, or in the alternative, modified in scope.  Such action is warranted under Federal Rule of Civil Procedure 45(c)(3), which provides that a court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or . . . subjects a person to undue burden."  With respect to privileges, the Federal Rules of Evidence provide as follows:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed. R. Evid. 501.  Here, several privileges and protections could be violated by compelling the District Attorney to testify at trial.

### A. Requiring the District Attorney to testify could result in violation of the attorney work product doctrine, the deliberative process privilege, and the law enforcement investigative privilege.

Given the nature of the instant suit, any direct- or cross-examination of the District Attorney could very well implicate three well-established forms of protection:  the attorney work product doctrine, the deliberative process privilege, and the law enforcement investigative privilege.  As a review of these doctrines demonstrates, they have much in common and their applicability to the instant situation can be addressed through a single line of analysis.

2

The attorney work product doctrine broadly shields attorney work product from disclosure. See, e.g., Hickman v. Taylor, 329 U.S. 495, 509-14 (1947). As made clear in the seminal Hickman case, it protects not only "files," but "mental impressions" "personal beliefs," and other "intangible" matters. Id. That which reflects the "mental impressions and thought processes of attorneys" and their "opinions about the case" "deserve[s] the most stringent protection" under the doctrine. Margaret Hall Foundation, Inc. v. Strong (In re Atlantic Fin. Mgmt. Secs. Litig.), 121 F.R.D. 141, 143 (D. Mass. 1988).

As the Hickman Court explained, the protection is necessary largely in light of the "public policy underlying the orderly prosecution and defense of legal claims" and the chilling effect on attorney work that could be produced by the mere fear of disclosure. 329 U.S. at 509-14. It stated in part as follows:

> Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney. . . . In performing his various duties . . . it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. . . . This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways . . . . Were such materials open to opposing counsel . . . [i]nefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

Id.[1]

---

[1] While it is sometimes thought that the attorney work product doctrine may only be asserted by attorneys representing parties to the case at issue, that view is incorrect. The view emanates from the fact that Fed. R. Civ. P. 26(b)(3) refers to claims of work product protection only by "part[ies]." However, the conclusion that properly follows from that fact is that Rule 26(b)(3) is not the appropriate rule to be consulted. Indeed, subpoenas to non-parties are governed by Federal Rule of Civil Procedure 45. That rule expressly requires quashing or modifying a subpoena that calls for "disclosure of privileged or other protected matter," and it contemplates one's "withholding subpoenaed information under a claim that it is privileged or subject to

The deliberative process privilege is similar. Its nature has been explained as follows:

> Federal courts have long recognized a policy against exploratory inquiries into the mental processes of governmental decision makers. . . . "The cases uniformly rest the privilege on the policy of protecting the 'decision making processes of government agencies' . . . . Manifestly, the ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions." . . . Also underlying the policy is the rationale that "the time and energies of public officials be conserved for the public's business to as great an extent as may be consistent with the ends of justice in particular cases."

Gomez v. City of Nashua, 126 F.R.D. 432, 434 (D.N.H. 1989) (quoting NLRB v. Sears Roebuck & Co., 421 U.S. 132, 150-51 (1975) (citations omitted), in the first instance and Community Fed. Sav. & Loan Ass'n v. Federal Home Loan Bank, 96 F.R.D. 619, 621 (D.D.C. 1983), in the second instance, and applying in situation involving prosecutor).

In particular, it is recognized that "[t]he decision whether to prosecute is the product of a deliberative process which should be afforded a high degree of protection from public inquiry." Id. at 435. Accordingly, the deliberative process privilege has been found applicable to prosecutors' "'mental processes or opinions'" and to provide protection where live testimony is sought. Id. (quoting Sullivan v. Stefanik, 605 F. Supp. 258, 260 (N.D. Ill. 1985) in case involving attempt to depose prosecutor).

The next form of protection is the common-law privilege protecting law enforcement investigative information and techniques. See, e.g., Puerto Rico v. United States, 490 F.3d 50, 62-64 (1st Cir. 2007) (expressly recognizing privilege's applicability to "'law enforcement techniques and procedures,'" in addition to "'confidential government surveillance

---

protection as trial-preparation material." Fed. R. Civ. P. 45(c)(3)(A), (d)(2). Subsection (d)(2), in fact, was intended to cover claims of "work product protection." Id. advisory comm. notes to 1991 ams. Additionally, as alluded to above, the work product doctrine arises from public policy considerations and exists independently of any procedural rule. See Hickman, 329 U.S. at 509-14 (making clear that work product rule arose as a matter of public policy).

information,'" and noting its broad application by other courts); <u>Douglas Oil Co. v. Petrol Stops Northwest</u>, 441 U.S. 211, 222 (1979); <u>Association for Reduction of Violence v. Hall</u>, 734 F.2d 63, 65-66 (1st Cir. 1984) (discussing privilege applicable to "'documents that would tend to reveal law enforcement investigative techniques or sources'" (quoting <u>Black v. Sheraton Corp. of Am.</u>, 564 F.2d 531, 545-46 (D.C. Cir. 1977))); <u>Gomez</u>, 126 F.R.D. at 434 (same); <u>United States v. Lilly</u>, 185 F.R.D. 113, 115 (D. Mass. 1999) (Young, J.) (discussing the "'qualified common-law privilege . . . for law enforcement investigatory information'" (quoting <u>Kattar v. Doe</u>, 1987 WL 11146, at *1 (D. Mass. Jan. 27, 1987))).  This privilege serves "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation," <u>In re Dept. of Investigation</u>, 856 F.2d 481, 484 (2d Cir. 1988), as well as to "safeguard[] the integrity of on-going civil and criminal investigations," <u>In re Sealed Case</u>, 856 F.2d 268, 271 (D.C. Cir. 1988).  The privilege applies to both documents and testimony.  <u>In re Sealed Case</u>, 856 F.2d at 271.

As the privilege is designed to protect the interests of law enforcement as well as the interests of witnesses, any argument that a particular source consented to disclosure would not operate to lift the protections of the privilege.  <u>See, e.g.</u>, <u>Irons v. Federal Bureau of Investigation</u>, 811 F.2d 681, 688 (1st Cir. 1987) (stating that protection for confidential sources is designed to further law enforcement interest in receiving free flow of information, in addition to source's interest in confidentiality); <u>see also</u> <u>Schmerler v. Federal Bureau of Investigation</u>, 900 F.2d 333, 336 (D.C. Cir. 1990); <u>Cleary v. Federal Bureau of Investigation</u>, 811 F.2d 421, 423 (8th Cir. 1987); <u>Kiraly v. Federal Bureau of Investigation</u>, 728 F.2d 273, 278 (6th Cir. 1984).  Moreover,

the privilege would not be deemed waived based on any prior disclosure of a portion of information at issue. See Murphy v. Federal Bureau of Investigation, 490 F. Supp. 1138, 1141 (D.D.C. 1980); see also Nadler v. United States Dept. of Justice, 955 F.2d 1479, 1487 (11th Cir. 1992); cf. Federal Bureau of Investigation v. Abramson, 456 U.S. 615, 631-32 (1982) (stating that information included in record prepared for law enforcement purposes does not lose protection upon being reproduced or summarized in document prepared for other purposes).

The latter two forms of protection are generally understood to call for a case-specific balancing of interests when they are invoked. See Gomez, 126 F.R.D. at 434 (discussing balancing applicable to law enforcement investigative privilege and deliberative process privilege, and noting that essentially same factors are considered under work product privilege); Kattar, 1987 WL 11146, at *1 ("The Court must balance the public interest in nondisclosure against the need of the particular litigant for access to the [information protected by the law enforcement investigative privilege]."). In these instances, "a party seeking [the information] must make a threshold showing of need, amounting to more than 'mere speculation.'" Hall, 734 F.2d at 66 (discussing principle in context of documents); see also Dellwood Farms, Inc. v. Cargill, Inc., 128 F.3d 1122, 1125 (7th Cir. 1997) (stating that there exists a "strong presumption against lifting the [law enforcement investigative] privilege"). "'The interest of the party asserting a privilege is strongest when the information in question falls squarely within the definition of privilege and its disclosure would 'undermine the public interest in free, candid, and uninhibited exchange of information or jeopardize the physical security of an individual or governmental institution.'" Gomez, 126 F.R.D. at 435 (quoting Hall, 734 F.2d at 66).

In the instant case, all three of the above protections are applicable. The Plaintiff's suit largely concerns the maintenance of a state criminal action against him, and any relevant

testimony that the District Attorney would have to offer would presumably concern the same. (Docket Item No. 1.) Thus, there exists a likelihood that either the Defendants or the Plaintiff could seek to elicit the disclosure of matters such as the following: the thought process of the District Attorney or other prosecutors in deciding whether and how to prosecute; investigative information or techniques used by law enforcement in connection with the prosecution; confidential sources; or communications by the police or witnesses concerning any of the above. The revelation of such matters could do harm even though the prosecution of the Plaintiff has concluded. It could reveal information that is relevant to investigation and prosecution methods generally, or it could simply have a chilling effect on the ability of prosecutors and members of law enforcement to communicate candidly in the performance of their legitimate duties. At the same time, it is not clear that information of type sought is important to establishing any defense or claim, or that it could not be obtained from other sources. The above privileges should be respected.

> **B.** **Requiring the sought testimony would violate the Massachusetts absolute governmental privilege for communications to secure the enforcement of law, which should be found applicable here.**

Requiring the District Attorney to testify could further offend the absolute governmental privilege for communications made to secure the enforcement of law that is recognized under the common law of Massachusetts. It has long been accepted in the Commonwealth that:

> "It is the duty of every citizen to communicate to his government any information which he has of the commission of an offense against its laws. To encourage him in performing this duty without fear of consequences, the law holds such information to be among the secrets of state, and leaves the question how far and under what circumstances the names of the informers and the channel of communication shall be suffered to be known, to the absolute discretion of the government, to be exercised according to its views of what the interests of the public require. Courts of justice therefore will not compel or allow the discovery of such information, either by the subordinate officer to whom it is given, by the

> informer himself or by any other person, without the permission of the government. The evidence is excluded, not for the protection of the witness or the party in the particular case, but upon general grounds of public policy, because of the confidential nature of such communications."

Attorney Gen. v. Tufts, 239 Mass. 458, 490-91 (1921) (quoting Worthington v. Scribner, 109 Mass. 487, 488-89 (1872) (involving communications made to Treasury officer, and collecting cases involving communications made to various types of governmental officials)); see also District Attorney v. Flatley, 419 Mass. 507, 510 (1995) (noting absolute nature of privilege and fact that "[n]o subsequent Massachusetts decision modifies or abrogates either Tufts or Worthington," but taking into account Legislature's passage of Public Records Law, which generally makes governmental records public but provides exemption for law enforcement materials).

That privilege should be found applicable in the instant case. It is not clear from a review of the Complaint here that any knowledge or conduct of the District Attorney would necessarily be relevant to the Plaintiff's federal claims, and thus the Defendants' defenses. (Docket Item No. 1) To the extent that his testimony would relate only to "an element of a claim or defense as to which State law supplies the rule of decision," his privileges must "be determined in accordance with State law." Fed. R. Evid. 501.

However, even if the District Attorney's testimony were to relate to both the federal and state claims at issue here, this Court should apply the state-law privilege described above. Even though such situations usually call for the application of federal law, "privileges created by state law may be considered by the federal courts, in appropriate cases, because 'a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy.'" Sterling Merchandising, Inc. v. Nestle, S.A., 470 F. Supp. 2d 77, 82-83 (D.P.R. 2006)

(quoting American Civil Liberties Union of Mississippi, Inc. v. Finch, 638 F.2d 1336, 1343 (5th Cir. 1981)). The relevant decision-making process in this circuit has been described in the following manner:

> [I]n determining whether to recognize a state law privilege that has no federal counterpart, federal courts utilize a balancing test, weighing the importance of the policies behind the state-law privilege against the federal policies favoring disclosure. The test is a two-prong question: (1) whether the state courts would recognize the purported state-law privilege, and (2) whether the federal court, applying its own independent judgment, finds that the state's asserted privilege is "intrinsically meritorious".
>
> The "intrinsically meritorious" test, applied by the First Circuit in [In re Hampers], adopts a four-tier test: (1) the communications must have originated in a confidence that they will not be disclosed, (2) the element of confidentiality must be essential to the full and satisfactory maintenance of the relation between the parties, (3) the relation must be one that the community believes should be sedulously fostered, and (4) the injury that would inure to the relation by the disclosure of the communications is greater than the benefit thereby gained for the correct disposal of the litigation.

Id. (citations omitted) (quoting In re Hampers, 651 F.2d 19, 22 (1st Cir. 1981)).

This test is satisfied in this case. As the above-cited authority demonstrates, there is no question that the privilege would be recognized by Massachusetts courts. Especially in light of that well-established state protection and the general secrecy surrounding communications within a prosecution and law enforcement team, it can be presumed that any relevant communication was made confidentially. That element of confidence is indeed essential to the smooth functioning of such a team. It is also one that the community values, as shown by the state authorities concerning the privilege itself, the exception to the public records law referenced therein, and the privileges outlined in the preceding subsection. And finally, it has not yet been shown that the resulting injury from disclosure is outweighed by any benefit here.

A few additional considerations buttress the conclusion that the privilege should be applied in this situation. First, the purpose of the rule discussed in Sterling and Hampers is to

9

promote federal-state comity. Sterling Merchandising, 470 F. Supp. 2d at 82-83 ("[T]he test followed by the First Circuit in determining whether to apply a state-law privilege in a federal question case that includes pendent state-claims is governed by a policy of comity to the states."). That purpose is especially disserved, and the affront to the state is most pronounced, where a federal court disregards a privilege that is held by the state government itself and that is deemed necessary to protect "the secrets of state" and further "the interests of the public," Tufts, 239 Mass. at 490-91 (quoting Worthington, 109 Mass. at 488-89).

Second, the observations above are not to be found merely in the opinions of Massachusetts courts. Indeed, favorably citing Worthington, the United States Supreme Court concluded in an early decision that "the principle of public safety justifie[d] and demand[ed] the rule of exclusion" of statements made to a state prosecutor by a known witness in order to secure the law's enforcement. Vogel v. Gruaz, 110 U.S. 311, 316-17 (1884). "It makes no difference that there was evidence of the speaking of the same words to persons other than [the prosecutor], and that the speaking of them to [him] was not the sole ground of action or of recovery," the Court added. Id. at 317. The Supreme Court later appeared to construe the privilege described in Vogel as limited to protecting the identity of witnesses. See Roviaro v. United States, 353 U.S. 53, 59-60 (1957). However, it cannot be denied that the earlier opinion reflects the recognition of a common-law principle that has been found sensible beyond the borders of Massachusetts. See, e.g., McCray v. Illinois, 386 US. 300, 309 (1967) (indicating that Roviaro Court gave "consideration to one aspect of the informer's privilege, the privilege itself having long been recognized in the federal judicial system" (citing, inter alia, Vogel)). The privilege should be applied.

### C. Compelling the District Attorney to testify would also be at odds with the general principle that forcing testimony by high government officials is disfavored.

Another, related ground for granting the relief requested herein is that forcing the District Attorney to comply with the Subpoena would be at odds with the general principle disfavoring compelling high government officials to testify. "In general, heads of agencies and other top government executives are normally not subject to depositions. The rationale pursuant to this policy is that such officials must be free to conduct their jobs without the constant interference of the discovery process." Church of Scientology v. Internal Revenue Serv., 138 F.R.D. 9, 12-13 (D. Mass. 1990) (Bowler, Mag. J.) (citations omitted) (collecting cases). While "[a]n exception to this general rule exists concerning top officials who have direct personal factual information pertaining to material issues in an action," "[a] top government official may . . . only be deposed upon a showing that the information to be gained from such a deposition is not available through any other source." Id. And as the Gomez court recognized in discussing a possible deposition of the member of a prosecutor's office:

> [The office] performs numerous investigations into purported criminal conduct as a part of its public function. Subjecting employees of that office to deposition absent the showing of a compelling need would violate public policy concerns that the time and resources of that office be conserved for the public business.

126 F.R.D. at 436. No such showing has yet been to offset the above considerations.

### D. As an alternative to quashing the Subpoena, this Court should restrict its scope.

In the event that this Court declines to quash the Subpoena to the District Attorney, it should modify the Subpoena so as to restrict any forced disclosure contrary to the privileges and protections discussed above. That is, the District Attorney should not be compelled to reveal the

11

substance of attorney work product, deliberative processes, law enforcement investigation, or communications made to secure the enforcement of law.

## III. CONCLUSION

For the foregoing reasons, the District Attorney's motion should be allowed, and the Subpoena should be quashed or modified as described herein.

        Respectfully submitted,

        MARTHA COAKLEY
        Attorney General

        /s/ Randall E. Ravitz
        Randall E. Ravitz (BBO # 643381)
        Assistant Attorney General
        Criminal Bureau
        One Ashburton Place
        Boston, Massachusetts 02108
        (617) 727-2200, ext. 2852

Dated: May 28, 2010

## **CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the Electronic Case Filing system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on the date set forth below.

Dated: May 28, 2010         /s/ Randall E. Ravitz
                                                                        Randall E. Ravitz